UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
Thuan Co Quach,

                              Plaintiff,

                                                    **MEMORANDUM & ORDER**
              - against -                            20-CV-5991 (PKC)

Commissioner of Social Security,

                              Defendant.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

Plaintiff Thuan Co Quach brings this action under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c), seeking judicial review of the Social Security Administration's ("SSA") denial of his claims for Disability Insurance Benefits ("DIB"). The parties have cross-moved for judgment on the pleadings. (Dkts. 10, 13.) For the reasons set forth below, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.

## BACKGROUND

### I.    Factual and Procedural Background

Plaintiff, born in June 1964, was 50 years old at his alleged onset date of disability. (Tr. 127.[1]) Plaintiff worked as an administrator in a real estate management office until 2014. (Tr. 44.) Before working in the real estate industry, Plaintiff worked for several years as a gift shop manager. (Tr. 44–45, 138, 147.)

---

[1] All references to "Tr." refer to the continuous pagination of the Administrative Transcript (*see* Dkt. 9), and not to the internal pagination of the constituent documents.

1

Since 2007, Plaintiff has received treatment for symptoms of major depressive disorder, dysthymic disorder,[2] lack of motivation, low energy, severe anxiety, poor concentration, and insomnia.  (Tr. 16, 298.)  Starting in 2012, Plaintiff was treated by Dr. Lawrence Liang, a general and geriatric psychiatrist, who held at least twenty-eight treatment sessions with Plaintiff between 2012 and February 2018.[3]  During many of these sessions, Plaintiff reported "feeling worthless" and unmotivated (Tr. 304, 306, 307–09), having trouble sleeping (Tr. 307, 309, 311–17), and being stressed, anxious, and irritable (Tr. 304, 306–07).  Dr. Liang's treatment notes from May 2014 through November 2017 contain his assessment that Plaintiff's symptoms were stable or improving (Tr. 308–24), yet his notes from January and February 2018 indicate that Plaintiff's anxiety, depression, and insomnia had worsened, going from "stable and improving" to "ongoing" symptoms (Tr. 304–06).

From April 2015 through October 2017, Plaintiff received regular examinations and treatment from Dr. Ching-Yin Lam, MD, for hypertension and dyspepsia (indigestion).  (Tr. 234–

---

[2] "Dysthymic disorder, or persistent depressive disorder, is a continuous, long-term form of depression." *Albino v. Berryhill*, No. 18-CV-6514 (LGS) (HBP), 2019 WL 2477957, at *14 n.27 (S.D.N.Y. May 29, 2019), *report and recommendation adopted*, 2019 WL 2465139 (S.D.N.Y. June 13, 2019).

[3] The record indicates that Plaintiff was treated by Dr. Liang on Feb. 7, 2018 (Tr. 304–05); Jan. 8, 2018 (Tr. 306); Nov. 13, 2017 (Tr. 307); Oct. 7, 2017 (Tr. 308); Aug. 14, 2017 (Tr. 309); May 22, 2017 (Tr. 310); Feb. 8, 2017 (Tr. 311); Nov. 16, 2016 (Tr. 312); Aug. 24, 2016 (Tr. 313); June 1, 2016 (Tr. 314); Feb. 27, 2016 (Tr. 315); Nov. 25, 2015 (Tr. 316); Sept. 3, 2015 (Tr. 317–18); June 17, 2015 (Tr. 319–20); Mar. 18, 2015 (Tr. 321); Oct. 29, 2014 (Tr. 322); Aug. 7, 2014 (Tr. 323); May 15, 2014 (Tr. 324); Feb. 26, 2014 (Tr. 325); Nov. 27, 2013 (Tr. 326); Aug. 21, 2013 (Tr. 327); May 22, 2013 (Tr. 328); Feb. 27, 2013 (Tr. 329); Dec. 20, 2012 (Tr. 330); Nov. 8, 2012 (Tr. 331); Oct. 11, 2012 (Tr. 332); Sept. 19, 2012 (Tr. 333); and Sept. 5, 2012 (Tr. 334).

267.)  In September 2016, Plaintiff was diagnosed by Dr. Victoria Zhang, a specialist in physical medicine and rehabilitation, with cervical spondylosis.[4]  (Tr. 268–73.)

Plaintiff protectively applied for disability insurance benefits on February 20, 2018, alleging that he had been disabled from January 1, 2015, through December 13, 2017, which was the date he last met the insured status requirements.  (Tr. 127–28.)[5]  In connection with his DIB application, Plaintiff had his claim initially reviewed by the Division of Disability Determinations of New York State's Office of Temporary and Disability Assistance ("OTDA").  (Tr. 172.)  As part of that review process, Plaintiff submitted a form in March 2018 to the OTDA reporting his daily activities and limitations on such activities.  (Tr. 169–80).  On that form, Plaintiff reported that he experienced "daily" panic attacks due to his anxiety, which caused him "confusion," led him to be "tired," and to have an elevated "heartbeat."  (Tr. 179.)  Plaintiff also reported that his anxiety began in 2014 after he "ha[d] [a] suicide attempt." (*Id.*)

In March 2018, Dr. Liang opined that Plaintiff suffered from major depressive mood disorder, and that he displayed symptoms of "depressed mood, lack of motivation[,] . . . severe anxiety, poor concentration, [and] insomnia[.]"  (Tr. 298.)  Dr. Liang concluded that Plaintiff had marked or extreme limitations in his ability to carry out instructions, understand and remember detailed instructions, make judgments on simple work-related decisions, to interact appropriately

---

[4] "Cervical spondylosis is a general term for age-related wear and tear affecting the disks in [a person's] neck." *Talavera v. Comm'r of Soc. Sec.*, No. 06-CV-3850 (JG), 2011 WL 3472801, at *4 n.8 (E.D.N.Y. Aug. 9, 2011) (citations omitted).

[5] The Administrative Law Judge's ("ALJ") decision states that Plaintiff filed for DIB on February 1, 2018, but the documents Plaintiff received at the time of his application records his application date as February 20, 2018.  (*Compare* Tr. 10, *with* Tr. 127–28.)  The difference is immaterial for the purposes of the parties' cross-motions.

with supervisors and co-workers, and to respond appropriately to work pressures in a typical work setting.  (Tr. 297–300.)

In April 2018, a state agency medical analyst, Dr. D. Chen, determined after reviewing Plaintiff's treatment notes from Dr. Liang and other records related to his physical impairments that "[t]here is insufficient evidence to substantiate the presence of" depressive disorders.  (Tr. 53.)[6]  Dr. Chen was unable to provide an assessment of Plaintiff's functional capacity as of his last-insured date, and therefore deemed Plaintiff not to be disabled.  (Tr. 52.)  Plaintiff's initial application for DIB was denied on May 1, 2018.  (Tr. 10, 57–60.)

In June 2018, Plaintiff requested a hearing before an ALJ, and appeared with his attorney Charles Weiser before ALJ Jack Russak on December 10, 2019.  (Tr. 28–30, 115.)  A Cantonese interpreter was also present to translate Plaintiff's testimony during the proceedings.  (Tr. 10, 30.)  The record before the ALJ included treatment notes from Dr. Liang prior to February 2018, but also notes from eleven additional treatment sessions between March 2018 and November 2019, all of which consistently noted that Plaintiff's depression and anxiety symptoms were "ongoing" and that Plaintiff was "still anxious, depressed and irritable, and easily overwhelmed."  (Tr. 348–65.)

During the hearing before the ALJ, Plaintiff's counsel explained that Plaintiff had severe psychiatric impairments that prevented him from focusing and maintaining attention throughout the workday and that he was unable to "get more than a couple of hours' sleep [a] night on a regular basis."  (Tr. 33.)   Plaintiff testified at the ALJ hearing that he slept approximately "two or three hours" every day, and that he could not sleep because he was worrying about "so many things going on."  (Tr. 41.)  Even though he was taking Melatonin to try to sleep, Plaintiff was unable to

---

[6] The record contains neither the first name of Dr. Chen, nor his specialty.  In his decision, the ALJ does not mention Dr. Chen at all.

sleep for longer periods.  (Tr. 41–42.)  Plaintiff testified that he generally slept four or five hours in the daytime, and that he had to just "lie [in] the bed" because thinking about things "upset[]" him.  (Tr. 40–41.)  When asked what he did during the day, Plaintiff responded that he did not know and that "time goes [by] fast."  (*Id*.)

Plaintiff testified that he stopped working in real estate because "[t]he number[s] didn't come out right." (Tr. 36.)  He reported no issues with showering or dressing himself, but stated that he had not driven in "a long time" and that he stopped driving because "[he] cannot focus" and was concerned that he might forget about "the red light[s]." (Tr. 35–36.)  Plaintiff reported that he lived with his wife and son and that he did not socialize with anyone else, as he did not have friends or attend religious services.  (Tr. 35–37.)  He had email and Facebook accounts, but claimed not to have "skills to read." (Tr. 37.)  Plaintiff also reported that his wife did the cooking because he would "[f]orget" and "ke[pt] burning" things when he tried to cook.  (Tr. 40.)  Plaintiff also explained that he did not shop for food or do laundry, but would sometimes vacuum the apartment.  (*Id*.)  Plaintiff reported being able to "walk four or five blocks" at most at a time and estimated that he could stand for about fifteen minutes.  (Tr. 40.)

During the hearing, the ALJ also heard testimony from Vocational Expert ("VE") Ralph E. Richardson regarding jobs a hypothetical person with Plaintiff's vocational profile and functional restrictions could perform.  (Tr. 10, 43–47.)  The ALJ posed a hypothetical question about a person of Plaintiff's age and education, before striking that question from the record.  (Tr. 45.)  The ALJ then reformulated the question to ask what kind of light work a hypothetical person of Plaintiff's educational and work experience could engage in, but the ALJ did not explicitly ask the VE to consider Plaintiff's age.  (Tr. 45–46.)  The VE responded that this hypothetical person

could engage in light work and could work as a hand packer, cleaner, or small products assembler. (Tr. 46–47.)

After the hearing, the ALJ sent a request for a medical interrogatory to clinical psychologist Annette De Paz Ortiz. (Tr. 393.) Dr. Ortiz, acting as a medical expert, subsequently reviewed the record and assessed Plaintiff's ability to do mental work-related tasks. (Tr. 393–402.) Dr. Ortiz determined that Plaintiff had either no limitations or mild limitations in his functional capacities. (Tr. 402.) Dr. Ortiz made these determinations without meeting with Plaintiff. (Tr. 398.)

Finally, the record contains an additional medical source statement ("Anonymous Medical Statement") dated November 25, 2019, which indicates that Plaintiff has "severe anxiety" and is "easily overwhelmed [and] sensitive in interpersonal relationship[s]." (Tr. 344–46.) The Anonymous Medical Statement further indicates that Plaintiff has dealt with "depression [for] more than 20 years" and that recent episodes "since 2018 have been severe and long lasting." (Tr. 345.) Although this document is signed, there is no printed name identifying the author and it is unclear from the record whether the signee was Dr. Liang or a different physician. (Tr. 345.)

By decision dated March 4, 2020, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") from January 1, 2015, his alleged onset date, through the date of the ALJ's decision. (Tr. 10–20.) Plaintiff requested a review of the ALJ's decision on March 9, 2020. (Tr. 123–26.) On October 21, 2020, the Appeals Council denied that request, making the ALJ's determination the Commissioner's final decision. (Tr. 1–3.) Thereafter, Plaintiff timely[7] commenced this action on December 9, 2020. (Complaint, Dkt. 1.)

---

[7] According to 42 U.S.C. § 405(g),

[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [her] was a party . . . may obtain a review of such

## II.     The ALJ's Decision

In evaluating disability claims, the ALJ must adhere to a five-step inquiry in which the plaintiff bears the burden of proof at the first four steps of the inquiry while the Commissioner bears the burden at the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted).[8]  First, the ALJ must determine whether the plaintiff is currently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i).  If the answer is yes, the plaintiff is not disabled. *Id.*  If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment.  *Id.* § 416.920(a)(4)(ii).  An impairment is severe when it "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." *Id.* § 416.922(a).  If the impairment is not severe, then the plaintiff is not disabled.[9]  *Id.* §

---

decision by a civil action commenced within sixty days after the mailing to [her] of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C.  § 405(g).  "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).  The final decision was issued October 21, 2020 (Tr. 1), and the Complaint was filed on December 9, 2020 (Complaint, Dkt. 1), 44 days after the presumed receipt date of the decision, rendering this appeal timely.

[8] Some of the cases herein involve supplemental security income ("SSI") regulations, while this case involves DIB, but the DIB and SSI regulations are "virtually identical." *Canter v. Saul*, No. 19-CV-157 (KAD), 2020 WL 887451, at *1 n.2 (D. Conn. Feb. 24, 2020).  The DIB regulations are found at 20 C.F.R. § 404.900 *et seq.*, while the parallel SSI regulations are found at 20 C.F.R. § 416.901 *et seq.*

[9] In cases involving mental health, a mental health impairment is severe when the plaintiff has either one extreme or two marked limitations in one of four broad areas of functioning, which include (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing themselves.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04(B).  An "extreme limitation" is defined as the inability to function independently, appropriately, or effectively, and on a sustained basis.  *Id.*  A "marked limitation" means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.  *Id.*

416.920(a)(4)(ii).  If the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether plaintiff has an impairment that meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  *Id.* § 404.1520(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App'x 1.  If the ALJ determines at step three that the plaintiff has an impairment that meets or equals one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act.  *Id.* § 404.1520(a)(4)(iii).  On the other hand, if the plaintiff does not have such impairment(s), the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing to steps four and five.  To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 404.1545(a)(1).  The ALJ will then use the RFC finding in step four to determine if the plaintiff can perform past relevant work.  *Id.* § 404.1520(a)(4)(iv).  If the answer is yes, the plaintiff is not disabled.  *Id.*  Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 404.1520(a)(4)(v).  If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits.  *Id.*

Here, at step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of January 1, 2015 through his last-insured date of December 31, 2017.  (Tr. 12.)  At step two, the ALJ determined that Plaintiff had the "following severe impairments: hypertension, dyspepsia, and major depressive disorder." (Tr. 12.) The ALJ found that Plaintiff's cervical spondylosis was not sufficiently severe as to satisfy the step two criteria.  (Tr. 12–13.)  At step three, the ALJ found that Plaintiff's mental impairments

did not meet or medically equal any of the impairments in the Listings.  (Tr. 13–15.)  The ALJ

then determined Plaintiff's RFC as follows:

> [T]he claimant had the residual functional capacity to perform light work as defined
> in 20 CFR 404.1567(b) except he is limited to simple, routine tasks and work in a
> low-stress job, defined as having occasional decision-making required and
> occasional changes in the work setting.  He is limited to occasional judgment
> required on the job, and work with no fast-paced work environments.  He is limited
> to only occasional interaction with coworkers and supervisors, and no interaction
> with the public.

(Tr. 14–15.)  Then, at step four, the ALJ concluded that due to his severe impairments, Plaintiff

could not perform his past relevant work as an apartment house manager and gift shop manager.

(Tr. 18.)  Finally, at step five, the ALJ found that there were other jobs Plaintiff could perform,

such as hand packer, cleaner, and small products assembler. (Tr. 19.)  The ALJ thus concluded

that Plaintiff was not disabled.  (Tr. 19–20.)

## STANDARD OF REVIEW

Unsuccessful claimants for disability benefits may bring an action in federal district court

seeking judicial review of the Commissioner's denial of benefits.  42 U.S.C. § 405(g); 42 U.S.C.

§ 1383(c).  In reviewing a final decision of the Commissioner, the Court's role is "limited to

determining whether the SSA's conclusions were supported by substantial evidence in the record

and were based on a correct legal standard."  *Talavera*, 697 F.3d at 151.  "Substantial evidence is

more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*)

(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotation marks and brackets

omitted).  In determining whether the Commissioner's findings are based on substantial evidence,

"the reviewing court is required to examine the entire record, including contradictory evidence and

evidence from which conflicting inferences can be drawn."  *Id.*  However, "it is up to the agency,

and not this court, to weigh the conflicting evidence in the record."  *Clark v. Comm'r of Soc. Sec.*,

143 F.3d 115, 118 (2d Cir. 1998).  If there is substantial evidence in the record to support the Commissioner's findings as to any fact, those findings are conclusive and must be upheld.  42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (*per curiam*).

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and fails to apply the relevant legal standards.  (Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mot."), Dkt. 10, at 7.)  For the reasons set forth below, the Court grants Plaintiff's motion and remands the ALJ's decision to the SSA due to the ALJ's failure to adequately develop the record, and because the ALJ's RFC determination is not supported by substantial evidence.

## I.    The ALJ Failed to Develop the Record

### A.    The ALJ's Duty to Develop the Record

Although Plaintiff did not expressly challenge the sufficiency of the record, the Court must independently consider whether the ALJ satisfied his duty to develop the record.  *Sanchez v. Saul*, No. 18-CV-12102 (PGG) (DF), 2020 WL 2951884, at *23 (S.D.N.Y. Jan. 23, 2020) ("As a threshold matter, and regardless of the fact that Plaintiff did not raise an express challenge to the adequacy of the Record, this Court must independently consider the question of whether the ALJ failed to satisfy his duty to develop the Record."), *report and recommendation adopted*, 2020 WL 1330215 (S.D.N.Y. Mar. 23, 2020).  "[B]ecause a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted).  "[E]ven where, as here, the claimant is represented by counsel," the ALJ's obligation to adequately develop the record applies.  *Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-3510 (PGG), 2015 WL 5472934, at *18 (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)).  "Legal errors regarding

the duty to develop the record warrant remand." *Wilson v. Colvin*, 107 F. Supp. 3d 387, 407 (S.D.N.Y. 2015) (collecting cases).

**B.     The ALJ Failed to Develop the Record as to the November 2019 Anonymous Medical Statement and the Severity of Plaintiff's Mental Disorder**

Here, the ALJ failed to develop a full and complete administrative record by not requesting more information on two issues.  First, the ALJ should have sought more information about the November 2019 Anonymous Medical Statement, which was one of the three medical opinions he considered in rendering his assessment of Plaintiff's RFC.  (*See* Tr. 17–18.)  This opinion from "an unknown author" determined that Plaintiff "had marked limitation with simple tasks and decision-making" and "extreme limitation[s] with interacting appropriately with supervisors and coworkers, and with responding appropriately to normal work situations and changes in a routine work setting[.]"  (Tr. 17.)  The ALJ found this opinion to be "unpersuasive" because it was "much more restrictive than indicated by the evidence as a whole," and "d[id] not adequately consider [Plaintiff's] own reported retained mental capacit[ies]."  (*Id.*)  The ALJ's assessment, however, ignores the obvious fact that the Anonymous Medical Statement, dated November 2019, could reflect deterioration in Plaintiff's condition from February 2018, when Plaintiff applied for disability benefits—a conclusion already suggested by Dr. Liang's (1) treatment notes from January and February 2018 indicating that Plaintiff's anxiety, depression, and insomnia had worsened, going from "stable and improving" to "ongoing" symptoms (Tr. 304–06); (2) March 2018 opinion that Plaintiff suffered from major depressive mood disorder, and that he displayed symptoms of "depressed mood, lack of motivation[,] . . . severe anxiety, poor concentration, [and] insomnia[,]" (Tr. 298), and that Plaintiff had marked or extreme limitations in his ability to carry out instructions, understand and remember detailed instructions, make judgments on simple work-related decisions, to interact appropriately with supervisors and co-workers, and to respond

appropriately to work pressures in a typical work setting (Tr. 297–300); and (3) notes from eleven additional treatment sessions between March 2018 through November 2019, all of which consistently noted that Plaintiff's depression and anxiety symptoms were "ongoing" and that Plaintiff was "still anxious, depressed and irritable, and easily overwhelmed."  (Tr. 348–65.) Moreover, because the 2019 opinion was from "an unknown author," the ALJ could not have accurately assessed the basis for the Anonymous Medical Statement's findings so as to support the conclusion that it was "unpersuasive."  In light of the ALJ's duty to develop the record, the appropriate remedy was to further inquire into which medical source wrote the opinion and made these significant diagnoses—whether that was Dr. Liang, another treating physician, or perhaps a consultative examiner.  It was especially important for the ALJ to determine the source of the Anonymous Medical Statement because if it was written by a physician who had treated Plaintiff sometime around November 2019, it would have strongly suggested that the earlier treatment notes on which the ALJ heavily relied were stale.  *See Rodriguez v. Comm'r of Soc. Sec.*, No. 20-CV-3687 (VSB) (RWL), 2021 WL 4200872, at \*18 (S.D.N.Y. Aug. 19, 2021) (remanding where the medical opinions of record were stale and did not account for Plaintiff's reported worsening of her conditions).  Therefore, on remand, the ALJ should inquire further into the source of the November 2019 Anonymous Medical Statement.  *See Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at \*13–27 (E.D.N.Y. Sept. 28, 2017) (remanding after court determined that the record had not been fully developed)

Second, the ALJ should have developed the record further regarding Plaintiff's suicide attempt in 2014, which he reported to OTDA in March 2018.  (*See* Tr. 179.)  Neither the ALJ, nor Dr. Ortiz referenced this attempted suicide in their respective assessments of Plaintiff, and there are no references to this seemingly significant mental health event in Dr. Liang's treatment notes.

The fact that there is no reference anywhere else in the record to a suicide attempt, and that Dr. Liang's notes indicate that Plaintiff consistently denied suicidal ideation, underscores the need for the ALJ to develop the record on the severity of this incident and any hospitalization and treatment records related to it, or to at least resolve the apparent inconsistency in the record.[10]  By failing to develop a complete record as to this issue, the ALJ did not carry out "his duty to develop the record and resolve any known ambiguities," a "duty [that] is enhanced when the disability in question is a psychiatric impairment."  *See Camilo v. Comm'r of the Soc. Sec. Admin.,* No. 11-CV-1345 (DAB) (MHD), 2013 WL 5692435, at *22 (S.D.N.Y. Oct. 2, 2013); *see also Rohring v. Comm'r of Soc. Sec.*, No. 19-CV-6376 (WMS), 2020 WL 3428109, at *5 (W.D.N.Y. June 23, 2020) (ordering remand in part because the ALJ mischaracterized the record by undercounting the number of times a claimant attempted suicide).  Accordingly, given the severity of the issue and how it can affect the overall assessment of Plaintiff's mental health, the ALJ is directed on remand to develop a complete record as to Plaintiff's reported suicide attempt.

## II.    The ALJ's RFC Determination Is Not Supported by Substantial Evidence

While a failure to develop the record is sufficient to remand, the Court further finds that the ALJ's RFC finding is not supported by substantial evidence.  *See Collins v. Comm'r of Soc. Sec.*, No. 20-CV-4693 (BMC), 2021 WL 3054964, at *4 (E.D.N.Y. July 20, 2021) ("An ALJ's RFC determination must be supported by substantial evidence." (citing *Rosa v. Callahan*, 168 F.3d 72, 81 (2d Cir. 1999))).  As noted, "[s]ubstantial evidence is more than a mere scintilla.  It means

---

[10] Admittedly, Plaintiff's counsel stated at the outset of the hearing that the record was complete, and did not raise this issue during the proceedings or in his brief. (Tr. 31-32; *see generally* Pl. Mot., Dkt. 10.)  However, where "it is apparent from the face of the record that the record lacks necessary information, the ALJ cannot be relieved of [the] affirmative obligation to develop the record by a statement of counsel."  *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 346 (E.D.N.Y. 2010).

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian*, 708 F.3d at 417 (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and brackets omitted)).  In determining if the ALJ's conclusions are based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.*  If there is substantial evidence within the record to support the Commissioner's findings, those findings are conclusive and must be upheld.  42 U.S.C. § 405(g).

Here, in determining Plaintiff's RFC, the ALJ considered three medical opinions: the March 2018 opinion of Dr. Liang, the November 2019 opinion of an unknown author, and the December 2019 opinion of Dr. Ortiz, the non-examining expert.  (Tr. 17.)  As explained above, the ALJ's failure to further investigate the nature of the November 2019 opinion reflects a failure to develop the record.  The Court further finds that the ALJ's determination that Dr. Liang's opinion was only "partially persuasive" while Dr. Ortiz's opinion was "persuasive" was not supported by substantial evidence.

### A.      The ALJ's Analysis of Dr. Liang's March 2018 Opinion is Unclear and Contradictory

The ALJ's analysis of Dr. Liang's opinion is plainly self-contradicting.  On the one hand, the ALJ found that Dr. Liang's opinion that Plaintiff had limited capacity for understanding, memory, social interaction, adaption, and sustained concentration was "generally supported by the evidence."  (*Id.*)  Yet, in the very next sentence of his report, the ALJ characterizes that opinion as being only "partially persuasive" because it was "not expressed in quantitative terms of functional limitations," thereby making it difficult for the ALJ "to determine to what extent the evidence supports" Dr. Liang's assessment.  (*Id.*)  It is unclear how the ALJ concluded that Dr. Liang's opinion was supported by the evidence if the ALJ was also unable to figure out what evidence

14

supported the opinion.[11]   Even the Commissioner acknowledges that "the ALJ's articulation of his reasoning is lacking in clarity."  (Def. Mem., Dkt. 13-1, at 17.)  This lack of clarity alone is sufficient grounds for remand.  *See Long v. Berryhill*, No. 18-CV-1146 (PKC), 2019 WL 1433077, at *4 (E.D.N.Y. Mar. 29, 2019) ("[R]emand is appropriate where 'inadequacies in the ALJ's analysis frustrate meaningful review,' such as when the ALJ makes credibility determinations and draw inferences from the record, yet fails to fully explain the basis for them.") (quoting *Cichoki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

In the defense's motion papers, the Commissioner attempts to rationalize the ALJ's conclusion that Dr. Liang's opinion is "partially persuasive" by arguing that the ALJ's assessment is "supported by the record of evidence as whole."  (*Id.*)  Yet, that argument is in conflict with the ALJ's statement that Dr. Liang's opinion was "generally supported by the evidence."  (Tr. 17.) Moreover, the Court cannot accept the Commissioner's *post hoc* rationalizations for the ALJ's flawed decisions.  *See Elder v. Comm'r of Soc. Sec.*, No. 15-CV-7370 (MKB), 2017 WL 1247923, at *12 (E.D.N.Y. Mar. 24, 2017) ("The Court cannot consider the Commissioner's post-hoc justifications that were not addressed by the ALJ as a basis to affirm the ALJ's decision."); *McAllister v. Colvin*, 205 F. Supp. 3d 314, 333 (E.D.N.Y. 2016) ("Such *post hoc* rationalizations are insufficient, as a matter of law, to bolster the ALJ's decision."); *see also Newbury v. Astrue*, 321 F. App'x 16, 18 (2d Cir. 2009) ("A reviewing court may not accept appellate counsel's post hoc rationalization for agency action.") (citations and internal quotation marks omitted).

---

[11] The Court notes that, in his decision, the ALJ suggests that by the time Plaintiff was first treated in 2007 by Dr. Liang he "had [already] received multiple antidepressant treatment[s] over the past 10 years."  (Tr. 16.)  However, this appears to be a misreading of Dr. Liang's March 2018 medical opinion, and there is no evidence in the record indicating that Plaintiff's mental health issues date back to 1997.

Accordingly, the lack of clarity and evidentiary support for the ALJ's consideration of Dr. Liang's opinions alone warrants remand.

**B.    Dr. Ortiz's Opinion Failed to Adequately Address Plaintiff's Subjective Account of His Own Mental Health and Limitations**

The Court also finds that the ALJ erred in concluding that the opinion of Dr. Ortiz, the non-examining consultative medical source, was "persuasive" and "supported by the evidence" as a whole.  (Tr. 17.)  Although the ALJ explained that Dr. Ortiz "adequately consider[ed] the claimant's subjective complaints, as well as his self-reported retained mental capacit[ies]" (Tr. 17–18), there is no evidence in the medical interrogatory to support that finding.  Dr. Ortiz cites repeatedly to Dr. Liang's "progress notes stat[ing] claimant has remained stable," and she analyzes the medication prescribed and the fact that there is no evidence of Plaintiff having been hospitalized, but Dr. Ortiz does not directly address Plaintiff's own recitation of his mental health issues or address his credibility.  (*See* Tr. 394–95, 398, 402.)  It is especially important that the ALJ consider whether Dr. Ortiz adequately reviewed the subjective complaints of Plaintiff, in light of the Second Circuit's repeated note of "caution[] that ALJs should not rely heavily on the findings of consultative physicians after a single examination," especially "in the context of mental illness where . . . a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019).  Therefore, the ALJ should have more carefully scrutinized Dr. Ortiz's interrogatory before affording it "persuasive" value given that Dr. Ortiz did not even personally examine Plaintiff.  (Tr. 398.)

Furthermore, as discussed above, Dr. Ortiz's opinion does not mention Plaintiff's reported suicide attempt in 2014, either because she did not have access to those records submitted to OTDA or because she simply overlooked them.  The fact that the ALJ found her opinion to be persuasive even though she did not consider this important information in determining the severity of

16

Plaintiff's illness is a sufficient ground to find that the ALJ's decision was not supported by substantial evidence. *See Bullock v. Comm'r of Soc. Sec.*, No. 18-CV-7364 (PKC), 2020 WL 2836717, at *7 (E.D.N.Y. June 1, 2020) (finding that the ALJ improperly weighed the medical evidence in part because the ALJ did not consider a claimant's hospitalization from suicide ideation); *see also Parker-Grose v. Astrue*, 462 F. App'x. 16, 17 (2d Cir. 2012) ("[The claimant's] case must be remanded for further administrative proceedings, because the ALJ's finding that [the claimant's] 'medically determinable mental impairment of depression is nonsevere,' is not supported by substantial evidence[.]").

Thus, the ALJ's finding that Dr. Ortiz's opinion is persuasive is not supported by substantial evidence.

\*   \*   \*

In sum, the Court finds that the ALJ's RFC assessment was not supported by substantial evidence, and remand is necessary.

## III.    The ALJ's Determination at Step Five was Not Supported by Substantial Evidence

The Court also finds that remand is appropriate because the ALJ's determination of what jobs are available for Plaintiff was based on incomplete testimony from the VE. At the hearing held on December 10, 2019, the ALJ asked the VE to consider "a person of claimant's *age, education*, and" — before the ALJ stated, "strike that." (Tr. 45 (emphasis added).) The ALJ then asked a few questions about how education level is classified in the Act's regulations, before posing his hypothetical scenario to the VE a second time: "Assuming a person of claimant's *educational and work experience* could engage in light work as defined by the regulations . . . ." (*Id.* (emphasis added).) As Plaintiff notes, this proposed hypothetical did not include Plaintiff's age. (Pl. Mot., Dkt. 10, at 16.) In fact, at no other time during the hearing, other than the struck question, did the ALJ ask the VE to take Plaintiff's age into consideration when offering his

opinion on what occupations are available.  (*See generally* Tr. 42–48.)  Plaintiff argues that because the VE did not actually address on the record whether someone of claimant's age in addition to his other limitations could perform the jobs the VE offered, the ALJ's determination that there are jobs in sufficient numbers in the national economy that Plaintiff could undertake is not supported by substantial evidence.

The Court agrees with Plaintiff.  "A VE's testimony is useful only if it addresses whether the particular claimant, with her limitations and capabilities, can realistically perform a particular job."  *McIntyre v. Colvin,* 758 F.3d 146, 151 (2d Cir. 2014); *see also Baker v. Berryhill*, No. 17-CV-8433 (AT) (DF), 2019 WL 1062110, at *35 (S.D.N.Y. Feb. 19, 2019) ("A vocational expert's testimony does not constitute substantial evidence where the ALJ asks about a hypothetical claimant whose limitations do not actually mirror those of the claimant."), *report and recommendation adopted*, 2019 WL 1059997 (S.D.N.Y. Mar. 6, 2019).  Therefore, courts in this circuit will regularly remand cases when the hypothetical situation asked of the VE does not accurately reflect the claimant's limitations.  *See, e.g.*, *Lester v. Comm'r of Soc. Sec.*, No. 13-CV-531 (FJS) (ATB), 2014 WL 4771860, at *13 (N.D.N.Y. Sept. 24, 2014) (remanding due to the ALJ's failure to pose an appropriate hypothetical to the VE based on the claimant's limitations); *Murphy v. Comm'r of Soc. Sec.*, No. 13-CV-960 (GTS) (ATB), 2015 WL 64440, at *12 (N.D.N.Y. Jan. 5, 2015) (same); *Baker*, 2019 WL 1062110, at *35 (same).

The Commissioner dismisses Plaintiff's position that the question about age was never asked as a "tenuous argument" that is a "red herring and without merit," and instead contends that due to the VE's years of experience, "it is safe to assume that [the VE] knew to consider Plaintiff's age when considering the hypothetical."  (Def. Mem., Dkt. 13 at 21.)  The Court finds this argument unconvincing.  While it is true that a VE's "credentials [and] history of testimony," are

relevant in determining whether the VE provided substantial evidence for his or her opinion, it is also the case that the VE's "ability to answer the ALJ['s] and attorney's questions" is relevant in that determination.  *See Travo v. Saul*, No. 19-CV-1335 (RAR), 2020 WL 3888003, at *10 (D. Conn. July 10, 2020) (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019)).  Because the ALJ did not ask again the question about a hypothetical claimant's age or include Plaintiff's age in any of his questions to the VE, the record does not show that the VE actually considered or addressed it.  Moreover, the Court observes that the Commissioner raises now for the first time the notion that the VE likely considered Plaintiff's age when recommending jobs he could perform, whereas the ALJ never made this argument in his decision.  As explained earlier, the Court "cannot consider the Commissioner's post-hoc justifications that were not addressed by the ALJ as a basis to affirm the ALJ's decision."  *See Elder*, 2017 WL 1247923, at *12.[12]

Finally, the Court finds that the VE's years of experience cannot cure this issue because there is evidence in the record that there were audio issues during the ALJ hearing, suggesting that the VE, in fact, may not have heard the question about age, even before it was struck, and that he may not have heard other parts of Plaintiff's testimony and the ALJ's questions.  The transcript indicates that throughout the 14-minute hearing (during about half of which the VE testified), the VE had repeated difficulty hearing the ALJ or others who were speaking.[13]  At one point in the

---

[12] In fact, the ALJ himself incorrectly stated in his decision that he asked the VE "whether jobs existed in the national economy for an individual with the claimant's age, education, work experience and [RFC]," which suggests to the Court that either the ALJ tried to brush over his own error in failing to produce a clear record of what the VE testified to, or that the ALJ missed the fact that the VE never directly answered a hypothetical that considered Plaintiff's age.  Either scenario is grounds for remand.

[13] Indications in the transcript that the VE was having potential audio issues include: the ALJ asking soon after the VE's testimony started, "Is that helpful? Mr. Richardson, is that helpful? Did you hear [Plaintiff's] response? Hello?" (Tr. 44); the VE asking the ALJ to repeat a hypothetical, asking "What was that again?" (Tr. 45); the ALJ asking the VE after posing a

hearing, the ALJ asked on behalf of the VE whether Plaintiff's prior work entailed managing "apartment building[s] or stores[,] or both," to which Plaintiff stated that he managed stores, and confirmed with the ALJ that he managed "[s]tores, only stores." (Tr. 44.) The ALJ then immediately asked whether the VE heard Plaintiff's response, and upon confirming that he had heard Plaintiff, the VE erroneously concluded that Plaintiff "worked as an apartment house manager." (Tr 44.) The ALJ immediately corrected the VE: "No it's stores." (Tr. 45.) But the VE nonetheless replied that Plaintiff worked as an "apartment house manager," and categorized that as "light work" with a specific vocational level of 5. (Tr. 45.) At that point, the ALJ should have recognized the technical issues with the VE, and adjourned the hearing for a different date. *See Roberto v. Saul*, No. 20-CV-1923 (AMD), 2021 WL 3912298, at *1 n.1 (Sept. 1, 2021) (explaining that the ALJ "held two hearings, each by video, because there were technical issues— 'audio problems'—during the first one").[14] The ongoing audio issues in this hearing make it impossible for this Court to assume, as the Commissioner urges, that the VE heard the ALJ's query about age and integrated that information into his consideration of which jobs would be available for Plaintiff.

Accordingly, the Court finds that the VE's testimony did not constitute substantial evidence for the ALJ's determination at step five of the sequential evaluation. On remand, the ALJ must

---

hypothetical, "Mr. Richardson, would you like me to repeat part or all of that?" (Tr. 46); and the VE asking the ALJ to repeat himself, asking "Would be what, Judge, I'm sorry?" (Tr. 47).

[14] At the close of the VE's testimony and shortly before ending the hearing, the ALJ stated: "All right, Mr. Richardson, thank you. I'll call you a little later." To the extent that the ALJ reached out to the VE to discuss Plaintiff's claims in an *ex parte* conversation that was never put on the record, those actions would be inappropriate. *Cf. Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019) (holding that an ALJ's *ex parte* communication with a consultative expert regarding the consultative opinion was "appropriate[]" but directed the ALJ to "upon remand" "make his inquiry of [the consultative expert] part of the administrative record").

formulate proper hypothetical questions that reflect an RFC determination supported by substantial evidence, and the ALJ must ascertain that the VE clearly addresses all of those hypothetical questions.

## CONCLUSION

For the reasons set forth herein, the Court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.   The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C.   § 405(g) for further consideration consistent with this Memorandum & Order.   The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K.  Chen*
Pamela K.  Chen
United States District Judge

Dated: September 29, 2022
        Brooklyn, New York